IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GIOVANNY VEGA, <br><br> Plaintiff, <br><br> v. <br><br> MAYOR MICHAEL NUTTER, et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 16-1528 |

## MEMORANDUM

**SCHMEHL, J.** /s/ JLS                                              AUGUST 25, 2017

Before this Court is Defendants' Motion to Dismiss Plaintiff Giovanny Vega's Complaint. Mr. Vega brings this action *pro se* under 42 U.S.C. § 1983 ("Section 1983") alleging violations of his constitutional rights as a pre-trial detainee at the Curran-Fromhold Correctional Facility ("CFCF") within the Philadelphia Prison System ("PPS"). Defendants moved to dismiss the complaint and Mr. Vega filed an untimely response. For the reasons below, however, the motion to dismiss is denied and Mr. Vega is granted leave to amend the complaint.

### I. BACKGROUND

Prisoner Giovanny Vega asserts *pro se* claims against: Michael Nutter, former Mayor of Philadelphia; Louis Giorla, former Commissioner of the Philadelphia Prison System; and Michele Farrell, former Warden of CFCF. Mr. Vega alleges violations of his civil rights due to the alleged triple-celling at CFCF.

Mr. Vega alleges the CFCF violated his constitutional rights when he was housed in three and four-man cells for nineteen months. (ECF Docket No. 5, at 3.) This practice

is often referred to as "triple-celling." According to Mr. Vega, the three to four-man units were unsanitary and had poor ventilation systems, which fostered "hostile engagement with the cellmates." (Id.) Mr. Vega was "forced to endure the different racial background and ethnic heritage with the specific intent to footer (*sic*) racism among the inmates." (Id.) Mr. Vega also claims he and the other inmates were subject to lockdowns and their movements restricted. As a result of the triple-celling, Mr. Vega suffered headaches and "adjustment disorder with anxiety." (Id.) Mr. Vega claims he complained about the triple-celling to unspecified "corrections officers" and "sergeants" but his complaints were ignored. (Id. at 4.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

Under Section 1983, liability is imposed on anyone who, acting under color of state law, deprives a person of any "rights, privileges, or immunities" secured by the Constitution, and provides a remedy for the deprivation of those rights. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Section 1983 requires the plaintiff demonstrate the defendant deprived him or her of those right secured by the Constitution or the laws of the United States. *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

Government officials may not be held liable under Section 1983 for the unconstitutional conduct of their subordinates under *respondeat superior*. However, the supervisor-defendant may be liable if: 1) the supervisor-defendant was personally involved in the constitutional violation by participating in the violation, directing others to commit the violation, or had actual knowledge of and acquiesced the violation; or 2) the supervisor-defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014),

3

*rev'd on other grounds Taylor v Barkes*, 135 S. Ct. 2042 (2015) (quoting *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004)).

### III.   TRIPLE-CELL

A pre-trial detainee has a reasonable desire to be as comfortable as possible during confinement. *Bell v. Wolfish*, 441 U.S. 520, 534 (1979). A detainee's condition of confinement claim, which includes "triple-celling," is examined under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 535. A condition of confinement is unconstitutional punishment if it results from an express intent to punish or is not rationally related to a legitimate governmental purpose. *Id.* at 538-39. If the restriction or condition of confinement is "not reasonably related to a legitimate goal – if it is *arbitrary or purposeless* – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees." *Id.* (emphasis added).

Assessing the constitutionality of triple-celling requires determining whether triple-celling is rationally related to the government's purpose of managing overcrowded prisons and looking to the "totality of the conditions" specific to the prison at issue. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008). The totality of the conditions includes "the size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise." *Id.* Defendants' motion, however, does not address the constitutionality of triple-celling, nor does it assess the merits of Mr. Vega's substantive claims.

Defendants argue Mr. Vega failed to allege the named Defendants had any personal involvement in the actions giving rise to the case. (ECF Docket No. 6, at 2.)

"Plaintiff merely lists the names of Mayor Nutter, Commissioner Giorla, and Warden Farrell in the caption of the complaint." (Id.) Defendants cite case law from our circuit rejecting Section 1983 cases against individuals under *respondeat superior*. (Id.); *see Phelps v. Flowers*, 514 F. App'x 100, 102 (3d Cir. 2013). Defendants rely on Mr. Vega's failure to plead with particularity the alleged involvement by the named Defendants as the basis for their motion to dismiss. However, Defendants do not substantively address whether the supervisor-defendants may be liable if they, with deliberate indifference to causing a constitutional harm, created or maintained a policy or custom of triple-celling within CFCF.

Our court of appeals adopted a test to determine supervisor liability under Section 1983 for deliberate indifference to an unconstitutional policy or practice. "The plaintiff must (1) identify the specific supervisory practice or procedures that the supervisor failed to employ, and show that (2) the existing custom or practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). The plaintiff must identify the acts or omissions of the supervisors showing deliberate indifference, and the relationship between the "identified deficiency" of a policy or custom and the injury suffered. *Id.*

Construed liberally, Mr. Vega's complaint alleges facts which could potentially establish constitutional violations of triple-celling. Mr. Vega alleges the overcrowding

5

and lockdowns created a hostile environment and produced unsanitary living conditions unfit for pre-trial detainees. (ECF Docket No. 5, at 3.) It is plausible that the facts alleged could establish that *other inmates* at CFCF suffered similar deprivations, creating a practice or custom within the prison. (emphasis added); *see Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002) (finding plaintiff's complaint did not "allege other inmates suffered similar deprivations . . . that might establish a custom") (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (providing that custom may be proven by showing that a specific course of conduct is "well-settled and permanent," even if that conduct is not expressly endorsed by a written rule)).

However, Mr. Vega's complaint does not allege specific facts establishing supervisor-defendants' personal involvement in the alleged constitutional violations. Although the complaint includes references to unidentified "correctional officers" and "sergeants," the complaint does not allege personal involvement by the named Defendants, former Mayor Nutter, former Commissioner Giorla, and former Warden Farrell.

Notwithstanding the deficiencies, courts must provide *pro se* litigants more flexible pleading standards than other litigants unless "it appears 'beyond doubt that the [*pro se*] plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hamilton v. Jamieson*, 355 F. Supp. 290, 298 (E.D. Pa. 1973); *see also Wells v. Brown*, 891 F.2d 591, 592-94 (6th Cir. 1988) (collecting cases where courts have required *pro se* litigants to adhere to basic pleading requirements). However deficient Mr. Vega's complaint appears, this Court cannot ignore his allegations of three and four-man housing units at CFCF.

## IV.     CONCLUSION

Therefore, Mr. Vega is granted leave to amend the complaint in accordance with the pleading standards set forth in Federal Rule of Civil Procedure 12(b)(6).  *Grayson*, 293 F.3d at 108 (finding that after a motion to dismiss has been filed, a District Court should inform a plaintiff that he has leave to amend his complaint within a set period of time, unless an amendment would be inequitable or futile).  An amended complaint would not be inequitable or futile given the seriousness of Mr. Vega's allegations against CFCF and its officials.  Accordingly, the motion to dismiss is denied and Mr. Vega is granted leave to amend the complaint with respect to his triple-celling claim.